IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MICHAEL DALE RIMMER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 3:10-1106** |
| ) | **Judge Trauger** |
| **ERIC HOLDER, in his official capacity as** ) | |
| **Attorney General, UNITED STATES** ) | |
| **DEPARTMENT OF JUSTICE, FEDERAL** ) | |
| **BUREAU OF INVESTIGATION, and** ) | |
| **ROBERT S. MUELLER, III, in his official** ) | |
| **capacity as Director (FBI),** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Pending before the court is the defendants' [Partial] Motion to Dismiss (Docket No. 22), to which the plaintiff has responded (Docket No. 25). For the reasons discussed herein, the defendants' motion will be granted, and counts I and II of the plaintiff's Complaint will be dismissed.

## BACKGROUND

The plaintiff, Michael Dale Rimmer, is presently incarcerated at Riverbend Maximum Security Correctional Institution in Nashville, Tennessee.[1] On February 8, 1997, Ricci Lynn Ellsworth, a clerk at the Memphis Inn in Memphis, Tennessee, went missing, and her body has never been recovered. It was clear to officers called to the Memphis Inn that night, however,

---

[1] Unless otherwise noted, the facts are drawn from the Complaint. (Docket No. 1.)

1

that a violent struggle had taken place at the Memphis Inn and that Ellsworth likely sustained injuries resulting in her death at the Memphis Inn before she disappeared.

On February 11, 1997, Memphis police contacted the FBI Safe Streets Task Force (SSTF), which was a conglomeration of federal and state law enforcement agencies, for assistance in investigating Ellsworth's disappearance. By February 18, 1997, the FBI had opened a file on the apparent kidnapping and murder of Ellsworth. On February 20, 1997, the Memphis FBI office sent a memo to the Director of the FBI, stating that a witness (now known to be an individual named James Darnell) had come forward and informed the FBI that he had seen two white males in the motel office between 1:30 a.m. and 2:30 a.m. on the night that Ellsworth disappeared. Darnell told the FBI that one man was inside the "closed clerk's cage" (where Ellsworth normally was working) taking money from the cash register and handing it to the other man, who was standing near the front door by the rear of a vehicle, which was backed up to the motel door with its trunk opened. Darnell told federal investigators that both men – neither of whom resemble the plaintiff – had blood on their hands.

On April 3, 1997, the Memphis FBI office sent the Honolulu FBI office a memo, photographic lineups, and pictures of a car that the FBI believed may have been the one backed up to the motel door. Darnell was in Hawaii, and the Honolulu branch was tasked with interviewing him to see if he could make identifications of potential perpetrators from the lineups. Rimmer's picture was included in the photo lineups, as, early on in the investigation, he emerged as a prime suspect in Ellsworth's disappearance.

On May 21, 1997, Darnell was interviewed and shown several lineups, including pictures

of Rimmer. He identified one individual – Billy Wayne Voyles – from the lineup as having been one of the bloodied men in the motel lobby; he did not identify Rimmer. Voyles had an outstanding warrant related to attempted murder and robbery charges. The interview and lineup results were sent back to the SSTF in Memphis on May 22, 1997. On June 21, 1997, Darnell (still in Hawaii) was again shown the lineup, and he again identified Voyles and not Rimmer.[2]

The plaintiff alleges that the results of this second lineup were also sent back to the Memphis SSTF office, and the Memphis FBI office, the Memphis SSTF, the Shelby County District Attorney's office, and Memphis police officials continued a joint investigation of the Ellsworth disappearance and apparent murder through the summer and fall of 1997, in anticipation of a federal and state prosecution of the plaintiff, who had emerged as the lone suspect. Indeed, documents uncovered by the plaintiff indicate that the federal authorities conducted lab work/evidence examination in the case and had prepared grand jury subpoenas, which were ultimately cancelled, as the federal authorities were unable to make arrangements for the transportation of certain inmate witnesses.

In January 1998, the plaintiff was indicted on state murder and robbery charges related to Ellsworth's disappearance. In November 1998, he was convicted and sentenced to death. After learning that the plaintiff had been sentenced to death in state court, the U.S. Attorney declined further prosecution, and the federal case was closed. On appeal from the state court conviction, the plaintiff's death sentence was reversed, and the case was remanded for a new sentencing

---

[2] The plaintiff alleges that "Voyles was abandoned as a suspect after providing an alibi which was not investigated." (Docket No. 1 at 3.)

trial. At the 2004 trial, Rimmer was once again sentenced to death. The Tennessee Supreme Court upheld this death sentence in 2008. In October 2008, the plaintiff filed a petition for post-conviction relief in the Shelby County Criminal Court, and he was appointed counsel for these collateral review proceedings on December 16, 2008.

The plaintiff alleges that, in preparing for the collateral review proceedings, he "discovered for the first time that the federal government had conducted [the] joint investigation [discussed above] with the Memphis police and the Shelby County District Attorney." (Docket No. 1 at 1.) That is, it was not until this stage in the proceedings that, through "independent investigation," the plaintiff learned, among other things, of Darnell's identification of Voyles. (*Id*. at 12.) Indeed, the plaintiff claims that the lead investigator in the case gave false testimony at trial when he testified that Darnell had not identified anyone from the photo lineups.

Since learning of the federal investigation, the plaintiff has attempted (1) to have the District Attorney's office disqualified from the collateral review proceedings and (2) to obtain the complete FBI record "regarding the disappearance of Ricci Lynn Ellsworth on February 8, 1997." (*Id.* at 11.) The plaintiff's efforts to have the District Attorney's office disqualified continue at the state court level, as does his collateral review proceeding, which raises *Brady* claims. The efforts to obtain the FBI records have resulted in this lawsuit.

The plaintiff maintains that, on April 7, 2009, he sent a Freedom of Information Act (FOIA) request to the FBI seeking the FBI file related to the Ellsworth disappearance. In response to this initial request, on June 12, 2009, the FBI produced 189 redacted pages of a claimed 616-page file. On August 7, 2009, the plaintiff appealed the denial of records and the

4

redactions, claiming that, in light of the prosecutor's failure to disclose the federal investigation and the false testimony presented at trial, "the full, un-redacted information possessed by the FBI is absolutely critical to [] investigation of this case in post-conviction proceedings." (*Id*. at 12.) The appeal was denied on September 28, 2009.

In addition to seeking the file through a FOIA request, the plaintiff pursued the materials in the collateral review proceedings beginning in September 2009. While it initially appeared that the District Attorney and the U.S. Attorney would work together to produce the relevant documents for the plaintiff or, alternatively, for the state court's *in camera* review, the FBI ultimately "refused to provide any files . . . other than those created by the Memphis Police Department." (*Id*. at 14.) After the plaintiff moved to compel the disclosure of all of the documents, the state court, on July 12, 2010, denied the motion, finding that, while the FBI probably had documents that were material, relevant, and potentially exculpatory, the state court had no authority to order the U.S. Attorney or the FBI to disclose them.

On November 19, 2010, the plaintiff filed this lawsuit against the U.S. Attorney General, the Department of Justice, and the FBI, asserting claims under the Administrative Procedure Act (APA) and for mandamus relief. (*Id.* at 21.) On January 18, 2011, the plaintiff amended his Complaint to add a claim under FOIA. (Docket No. 15.) The plaintiff maintains that the defendants have a duty to protect his constitutional rights, and he seeks an order from the court compelling the federal authorities to "produce the documents sought, and release them to plaintiff." (Docket No. 1 at 22; Docket No. 15.) As alternative relief under FOIA, the plaintiff requests an *in camera* review by the court to determine the validity of any defense objections to

production.[3]

## ANALYSIS

The defendants have moved to dismiss the APA and mandamus claims in the plaintiff's Complaint and seek for this case to proceed solely as a FOIA action. The plaintiff maintains that all three claims offer viable avenues for relief.

**I.   APA**

The APA states that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA permits the reviewing court to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action," and, where, appropriate, "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions." 5 U.S.C. § 706. Courts are to give the APA a "hospitable interpretation" that encourages district court review of agency action. *Garcia v. Vilsack*, 563 F.3d 519, 522-23 (D.C. Cir. 2009).

These broad provisions are limited, however, by the fact that the APA only permits judicial review of agency action where there is "no other adequate remedy in a court." 5 U.S.C.

---

[3] As this case has moved forward, the size of the relevant file has become clearer and the gap between the parties as to which materials should be disclosed/redacted has narrowed. (*See* Docket Nos. 22-23.) On July 22, 2011, after a telephone conference with the parties, the court ordered the defendants to submit the entire 786-page file, with the defendants' proposed redactions and briefing in support, to the court for an *in camera* review by August 12, 2011. (Docket No. 24.) The plaintiff is due to respond to the defendants' briefing by August 19, 2011. (*Id.*)

§ 704. In light of this provision, the Sixth Circuit has concluded that "the APA does not express the U.S. government's consent to suit if an alternate adequate remedy is available to review a final agency action."[4] *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). The relief offered by the "alternate remedy" will "be deemed adequate where a statute affords an opportunity for *de novo* district-court review of the agency action." *Garcia*, 563 F.3d at 522-23 (internal quotation omitted).

The defendants argue that FOIA clearly provides an "adequate remedy in a court," thereby precluding an APA claim. (Docket No. 22 at 10.) The defendants point out that FOIA permits a district court to engage in a *de novo* review of the agency's response to the FOIA request, and, if the court finds that materials were improperly withheld under FOIA, the court is authorized to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant," just as the court would be authorized to do under the APA. (Docket No. 22 at 12; *citing* 5 U.S.C. § 552(a)(4)(B)). The defendants go on to cite numerous cases in which the court concluded that a plaintiff could not pursue an APA claim because his FOIA claim provided an "adequate remedy."[5] (Docket No. 22

---

[4]Because the "adequate remedy" provision is viewed as an exception to the waiver of sovereign immunity found in the APA, the defendants' motion as to the APA claim challenges the court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See id.* The defendants' challenges to the mandamus claim, which do not involve issues of jurisdiction, are raised under Fed. R. Civ. P. 12(b)(6), which considers whether the plaintiff has stated a "plausible" claim for relief. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

[5]*See e.g. Cent. Platte Natural Res. Dist. v. USDA*, 643 F.3d 1142, 1148 (8th Cir. 2011)("FOIA [] bars judicial review of an APA claim where the claimant seeks 'a court order' to produce the same documents under both FOIA and the APA"); *Walsh v. U.S. Dept. of Veterans Affairs*, 400 F.3d 535, 538 (7th Cir. 2005); *Feinman v. FBI*, 713 F. Supp.2d 70, 76-77 (D.D.C. 2010)("This Court and others have uniformly declined jurisdiction over APA claims that sought
7

at 11.)

In response, the plaintiff points to a few cases involving "joint state and federal investigations," in which the court concluded that a litigant could employ the APA to challenge a federal agency's failure to produce documents or evidence. (Docket No. 25 at 4 citing *U.S. v. Williams*, 170 F.3d 431, 434 (4th Cir. 1999); *In re Recalcitrant Witness Boeh v. Gates*, 25 F.3d 761 (9th Cir. 1994); *Johnson v. Reno*, 92 F. Supp.2d 993 (N.D. Cal. 2000)). Indeed, in *Johnson v. Reno*, the court noted, citing *Boeh*, that "the Ninth Circuit stated that the appropriate means for challenging a federal agency's refusal to produce testimony or documents is either an action under the Administrative Procedure Act or a mandamus action, both of which Plaintiff has now brought before this Court," and, citing *Williams*, that "an APA action [is] . . . the proper means for challenging a federal agency's refusal to produce information to a criminal defendant in state court." 92 F. Supp. 2d at 994.

Additionally, the plaintiff argues that, in asserting that this is only a FOIA case, the defendants have "understat[ed] the factual predicate" of the Complaint, which alleges that the defendants' recalcitrance with regards to the documents has extended beyond the FOIA requests. (Docket No. 25 at 4.) Moreover, in the plaintiff's view, the alleged *Brady* violations afford the plaintiff a "separate constitutional claim under the APA." (*Id.* at 6.) Indeed, in *Williams*, the court concluded that a "state criminal defendant, aggrieved by the response of a federal law enforcement agency made under its regulations, may assert his constitutional claim to the investigative information before the district court, which possesses authority under the APA to

remedies made available by FOIA.")

compel the law enforcement agency to produce the requested information in appropriate cases." 170 F.3d at 434.

Despite this case law, in light of the pending FOIA claim, the APA claim must be dismissed. While *Williams*, *Boeh*, and *Reno* suggest that an APA claim could be a viable route to relief for the plaintiff here, none of those cases also involved a claim under FOIA. Therefore, the "adequate remedy" provision from Section 704 of the APA was not expressly before the court, as it is here. Indeed, the plaintiff has not come forward with any case law in which a litigant, seeking only the production of documents from a federal agency, raised both FOIA and APA claims and the court allowed both claims to proceed in tandem. In contrast, the defendants have come forward with numerous cases in which the court ruled that Section 704 of the APA clearly prohibits the plaintiff – only seeking documents from a federal agency – from asserting both a FOIA and an APA claim in the same litigation.

The plaintiff's related argument that he has an independent constitutional claim under the APA is also misplaced. As the Eighth Circuit stated in *Central Platte*, "a claimant may simultaneously pursue claims under the APA and FOIA" to vindicate constitutional rights, "if the requested remedy under the APA includes more than disclosure of documents." 643 F.3d at 1148; *see cf. Nat. Assoc. of Waterfront Employers v. Chao*, 587 F. Supp.2d 90, 97 (D.D.C. 2008)(finding that FOIA did not offer an adequate alternative remedy because the "plaintiffs seek vindication of their First Amendment and common law rights to access administrative proceedings . . . [and] to enforce their right to notice and comment rule making under the APA, and they challenge the authority of the Chief ALJ to institute a substantive rule via a

9

memorandum.")

Here, the plaintiff seeks the exact same remedy for all of his claims – the production of the full FBI file, un-redacted. As discussed above, there appears to be judicial unanimity that, where a plaintiff asserts both a FOIA and an APA claim, both of which only seek the production of documents allegedly wrongly withheld by an agency, the FOIA claim, with its *de novo* standard of review, provides the sole avenue for relief, and the APA claim is barred by Section 704. In light of this, the plaintiff's APA claim will be dismissed.[6]

**II.    Mandamus**

Mandamus is a "drastic" and "extraordinary" remedy available only if (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff. *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011). While the defendants assert that none of the prongs of the mandamus test is satisfied by the allegations in the Complaint, "most importantly, plaintiff has ample alternative remedies available to him," including the FOIA claim, as discussed above. (Docket No. 22 at 17.) On this point, the plaintiff responds by, again, citing *Reno*, in which the court ruled that the plaintiff could pursue both APA and mandamus claims at the same time. (Docket No. 25 at 8.)

The plaintiff's mandamus claim fails under the standard elucidated by the Sixth Circuit in *Carson.* Again, the FOIA claim provides an adequate and available remedy for the plaintiff,

---

[6] It is, therefore, not necessary to consider the defendants' alternative arguments for dismissing the APA claim. (Docket No. 22 at 13-16.)

who, through the FOIA claim and the mandamus claim, seeks the same relief – the production of the documents. The mandamus claim simply fails on its face and, therefore, will be dismissed.

## **CONCLUSION**

The defendants' motion will be granted, counts I and II of the plaintiff's Complaint will be dismissed, and this case will proceed as a FOIA action against the defendants.

An appropriate Order will enter.

_____
ALETA A. TRAUGER
U.S. District Court Judge